IN THE DISTRICT COURT OF STEPHENS COUNTY
STATE OF OKLAHOMA

FILED DISTRICT COURT
Stephens County, Okla.

MAY 2 8 2015

MARGARET CUNNINGHAM
*COURT CLERK*

JAY WINFRED TATE, an Individual )
and as Co-Personal Representative of the )
ESTATE OF JOSHUA WINFRED TATE, )
Deceased, and LAURA A. DANIEL, an )
Individual and as Co-Personal Representative )
of the ESTATE OF JOSHUA WINFRED )
TATE, Deceased, )
)
    Plaintiffs, )
)
vs. )  No. CJ-15-79R
)
FORD MOTOR COMPANY and )
BK EQUIPMENT, LLC, )
)
    Defendants. )

## PETITION

1. This Court has jurisdiction pursuant to 12 Okla. Stat. § 2004(F).

2. This Court is the proper venue because Defendant BK EQUIPMENT, LLC has its principal place of business in Stephens County, Oklahoma now and at the time of the incident made the basis of this suit and because co-defendants may properly be sued in any county in which a co-defendant resides.

3. Plaintiffs are residents of Oklahoma.

4. Defendant Ford Motor Company ("Ford") is a Delaware for profit corporation which may be served in care of its registered service agent, The Corporation Company, 1833 S. Morgan Road, Oklahoma City, OK 73128.

5. Defendant BK Equipment, LLC is an Oklahoma limited liability company which may be served in care of its registered service agent, James David Peacock III, Rt 1, Comanche, OK 73529.

Exhibit 1

## FACTS COMMON TO ALL CAUSES OF ACTION

6. At issue in this lawsuit are a 2010 Ford F250 Super Duty 4x4 pickup truck bearing VIN 1FTSW2BR0AEA73002 ("the F250" and "the subject vehicle"), its rollover protection system ("ROPS"), and its accident prevention features, i.e., more precisely, its lack thereof.

7. At the time the subject vehicle was designed and manufactured, Ford had actual knowledge of the need for stability and handling features, to include electronic stability control ("ESC"), that would assist in detecting and reducing loss of traction and preventing motor vehicle accidents, including rollover accidents.

8. At the time the subject vehicle was designed and manufactured, Ford had actual knowledge that, with such features to include ESC, loss of directional control crashes can be prevented.

9. Ford had actual knowledge of the need to conduct dynamic testing during the development phase of its vehicles, including the subject vehicle, and before the vehicles are sold to consumers.

10. The F250 was not adequately tested by Ford.

11. One purpose of performing proper handling and stability testing is to determine the difficulty of maintaining directional control over the vehicle.

12. Loss of directional control over light trucks can lead to rollover crashes.

13. At the time the subject vehicle and its ROPS were designed, Ford knew about crashworthiness.

14. Crashworthiness is the science of minimizing the risk of serious or fatal injury in motor vehicle collisions through the use of safety systems.

15. There are five basic crashworthiness principles: (1) maintain occupant survival space, (2) manage the collision energy, (3) restrain the occupant, (4) prevent ejection, and (5) prevent fuel-fed fires.

16. Crashworthiness requires that an auto manufacturer design its vehicles in such a way that when a crash occurs, injuries to the people inside the vehicle are minimized to the extent practical.

17. Ford designed, manufactured, assembled and placed into the stream of commerce the F250.

18. Ford designed, manufactured, assembled and placed into the stream of commerce the F250's ROPS.

19. At the time the subject vehicle was designed and manufactured, Ford had actual knowledge of the need for its motor vehicles' ROPS to be crashworthy.

20. A ROPS consists of: (1) the roof structure; (2) the seat belt restraint; (3) the rollover-activated side curtain air bag; and (4) the vehicle's glazing, including all components of these devices.

21. At the time the subject vehicle and its ROPS were designed and manufactured, Ford had actual knowledge of the need for occupants to be restrained, to be coupled to their seats and to be completely contained within the safer confines of the vehicle during foreseeable rollover crashes, such as the subject incident.

22. At the time the subject vehicle's ROPS was designed and manufactured, Ford had actual knowledge of the need for roofs to maintain their integrity in foreseeable rollover crashes, such as the subject incident.

23. The F250's ROPS was not adequately tested.

24. One purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS adequately maintains the occupant survival space.

25. One purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS adequately restraints an occupant.

3

26. One purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS completely contains an occupant within the vehicle's safety cell.

27. Safer alternative designs existed when the subject vehicle and its ROPS were designed and manufactured that would have prevented or significantly reduced the risk of rollover and of injury or death to its users without substantially impairing the vehicle's utility.

28. The safer alternative designs for the subject vehicle include handling and accident prevention features such as ESC.

29. The safer alternative designs for the subject vehicle's ROPS include a roof structure that will maintain its integrity.

30. The safer alternative designs for the subject vehicle's ROPS includes a restraint/supplemental restraint (e.g., seat belt and rollover-activated side curtain air bag or safety canopy) that will provide adequate occupant restraint and containment.

31. On November 16, 2014, Joshua Winfred Tate was the properly seat-belted driver of the subject vehicle owned by his employer, Defendant BK Equipment, LLC.

32. Weather and road conditions were treacherous and icy.

33. As the F250 traveled westbound on Interstate Highway 40 in Beckham County, Oklahoma, it suddenly began to skid, leaving the roadway to the left and overturning, coming to rest on its passenger side.

34. Joshua Winfred Tate sustained serious injuries from which he died at the scene.

35. Joshua Winfred Tate was 26 years old at the time of his death.

36. According to the death certificate, Joshua Winfred Tate died of blunt force head trauma.

37. The defective subject vehicle and ROPS as well as the negligence of Ford were producing and proximate causes of the crash, the death of Joshua Winfred Tate, and Plaintiffs' injuries and damages as set forth herein.

38. Ford's negligent conduct was attributable to its employees and/or agents who, at all times relevant, were acting within the course, purpose and scope of their employment and/or agency, and with the authority, consent, approval and ratification of Ford.

39. Defendant BK Equipment, LLC owed a duty to exercise ordinary care in directing its employees to do work in furtherance of its business.

40. BK Equipment, LLC breached said duty when it sent Joshua Winfred Tate out on a delivery run in the middle of a snow and ice storm that presented an extreme degree of risk and when it was foreseeable that he would be injured while driving in such conditions.

41. BK Equipment, LLC's negligent conduct was a proximate cause of the crash, the death of Joshua Winfred Tate, and Plaintiffs' injuries and damages as set forth herein.

42. Joshua Winfred Tate was not married at the time of his death and did not have any children.

43. Plaintiffs Jay Winfred Tate and Laura A. Daniel, the parents who survive Joshua Winfred Tate, mourn his loss daily.

44. Jay Winfred Tate and Laura A. Daniel have been emotionally scarred as a result of his death.

45. Jay Winfred Tate and Laura A. Daniel seek redress for the preventable death of their beloved son.

## CAUSES OF ACTION

### I. Strict Liability and Negligence – Ford

46. Joshua Winfred Tate ("Decedent") was killed by defective products that were designed, manufactured, distributed, and placed into the stream of commerce by Ford.

47. The defective products are the F250 and its ROPS.

48. Decedent sustained fatal injuries due to Ford's dangerously defective products.

49. Decedent sustained fatal injuries due to Ford's negligence.

50. Ford designed, manufactured, assembled, marketed, and sold the products which it intended for use on public roadways.

51. The products were in a defective condition which was unreasonably dangerous to the user, for which Ford is strictly liable.

52. Ford is in the business of manufacturing and selling vehicle products in general, the subject vehicle in particular, as well as its ROPS.

53. The products were not reasonably fit for the ordinary purpose for which they were reasonably expected to be used.

54. The products were defective and dangerous to an extent beyond that which would be contemplated by the ordinary user with the ordinary knowledge common to the community as to the products' characteristics.

55. Decedent was such an ordinary user.

56. Because of the defects, the products were unreasonably dangerous to a person who uses, consumes, or might be reasonably expected to be affected by the products.

57. Because of the defects, the products were unreasonably dangerous to Decedent.

58. The products were defective at the time the F250 was manufactured and sold by Ford.

59. The F250 was defective because it was not equipped with electronic stability control (ESC) and had poor handling and stability characteristics.

60. The F250's ROPS was defective because it was not crashworthy in foreseeable rollover crashes, such as the subject incident.

61. The F250's ROPS was defective because it did not include a rollover-activated side curtain air bag or safety canopy.

62. The F250's ROPS was defective because it had a weak roof structure.

63. The roof structure was inadequate to withstand loading it would receive in foreseeable rollover crashes, such as the subject incident.

64. The F250's ROPS was defective because it had seat belts that do not maintain an occupant in contact with or in close proximity to the seat back and seat cushion in foreseeable rollover crashes, such as the subject incident.

65. Ford was negligent in its design, manufacture, distribution and sale of the products.

66. Ford negligently designed the F250 without ESC.

67. Ford negligently designed the F250's ROPS with a weak roof.

68. Ford negligently designed the F250's ROPS without a rollover-activated side curtain air bag or safety canopy.

69. Ford negligently designed the F250's ROPS with seat belts that do not maintain an occupant in contact with or in close proximity to the seat back and seat cushion in foreseeable rollover crashes, such as the subject incident.

70. Ford negligently manufactured the F250 without ESC.

71. Ford negligently manufactured the F250's ROPS with a weak roof.

72. Ford negligently manufactured the F250's ROPS without a rollover-activated side curtain air bag or safety canopy.

73. Ford negligently manufactured the F250's ROPS with seat belts that do not maintain an occupant in contact with or in close proximity to the seat back and seat cushion in foreseeable rollover crashes, such as the subject incident.

74. Ford negligently distributed and sold the products with defects and without warnings regarding such defects.

75. Ford was negligent in failing to properly test – including handling testing – the F250.

76. Ford was negligent in failing to properly test – including dynamic rollover testing – the F250 to assess the performance of its ROPS.

77. Ford was negligent in choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn").

78. Ford was negligent in choosing to disregard and ignore its obligation to hold the safety of the public paramount.

79. Ford's negligence proximately caused the rollover crash, the death of Joshua Winfred Tate, and Plaintiffs' injuries and damages complained of herein.

80. In the foregoing regards, Ford acted intentionally, maliciously, in reckless disregard of the rights of others and with gross negligence.

### II. Negligence – BK Equipment, LLC

81. Decedent Joshua Winfred Tate sustained fatal injuries as the result of BK Equipment, LLC's negligence.

82. BK Equipment, LLC was negligent in sending Joshua Winfred Tate out on a delivery run in the middle of a snow and ice storm that presented an extreme degree of risk.

83. Local news media were reporting that the roads were treacherous, but BK Equipment, LLC nonetheless required Joshua Winfred Tate to make the delivery run.

84. Under such adverse weather and road conditions, the crash and resulting injuries sustained by Decedent were foreseeable to BK Equipment, LLC.

85. BK Equipment, LLC knew, or in the exercise of reasonable care should have known, at the time it sent Decedent on the delivery run that what it was requiring of Decedent was extremely dangerous.

86. At the time of the delivery run during which Decedent was killed, BK Equipment, LLC had knowledge that weather and road conditions were of the kind that cause crashes resulting in injuries and deaths.

87. Because the crash in which Decedent was killed was foreseeable by BK Equipment, LLC, Decedent's injury is also foreseeable and does not fit within the definition of a compensable workers' compensation injury under Title 85A § 2(9)(a).

88. In the foregoing regards, BK Equipment, LLC acted intentionally, maliciously, in reckless disregard of the rights of others and with gross negligence.

89. Defendant BK Equipment, LLC's negligence was a proximate cause of the rollover crash in which Decedent was killed.

90. Defendant BK Equipment, LLC's negligence was a proximate cause of Plaintiffs' injuries and damages complained of herein.

### III. Damages

91. Plaintiffs bring this action as the surviving parents and next of kin of Joshua Winfred Tate, Deceased. This action is brought, in part, pursuant to Okl. St. Ann. § 1053 and pursuant to the terms and provisions of Okl. St. Ann. § 1051 and any and all other applicable laws, including the common law of the State of Oklahoma.

92. Plaintiffs Jay Winfred Tate and Laura A. Daniel were damaged as a result of the death of Joshua Winfred Tate.

93. Plaintiffs' injuries and damages were proximately caused by the defective products and negligence of Defendants.

94. Plaintiffs' injuries and damages include funeral and burial expenses.

95. Plaintiffs' injuries and damages include pecuniary loss.

9

96. Plaintiffs' injuries and damages include loss of consortium.

97. Plaintiffs' injuries and damages include pain, grief, and anguish of Decedent prior to his death.

98. Plaintiffs' injuries and damages include mental anguish.

99. Plaintiffs are also entitled to punitive damages from Defendants.

100. Plaintiffs are also entitled to pre-judgment interest, post-judgment interest, and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jay Winfred Tate, an Individual and as Personal Representative of the Estate of Joshua Winfred Tate, Deceased, and Laura A. Daniel, an Individual and as Personal Representative of the Estate of Joshua Winfred Tate, Deceased, demand judgment against the Defendants, jointly and severally, in an amount in excess of Seventy-five Thousand Dollars ($75,000), the amount required for diversity action pursuant to Section 1332 of Title 28 of the United States Code; and for punitive damages in an amount in excess of Seventy-five Thousand Dollars ($75,000.00), the amount required for diversity action pursuant to Section 1332 of Title 28 of the United States Code; together with such interest, costs, and reasonable attorneys' fees as may be provided by law, and/or such other relief as the Court deems appropriate..

THE AMMONS LAW FIRM, L.L.P.

By: _____
Patrick R. Scott, OBA #30915
Bennett A. Midlo, *pro hac vice app. pending*
3700 Montrose Boulevard
Houston, TX 77006
Telephone:   (713) 523-1606
Facsimile:    (713) 523-4159

*ATTORNEYS FOR PLAINTIFFS*

**JURY TRIAL DEMANDED**

**ATTORNEYS LIEN CLAIMED**

 **CT Corporation**

**Service of Process Transmittal**
08/19/2015
CT Log Number 527671970

**TO:** Chris Dzbanski
Ford Motor Company
1 American Rd, Whq 421-E6
Dearborn, MI 48126-2798

**RE:** Process Served in Oklahoma

**FOR:** Ford Motor Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jay Winfred Tate, an Individual and as Co-Personal Representative of the Estate of Joshua Winfred Tate, Deceased and Laura A. Daniel, an Individual and as Co-Personal Representative of the Estate of Joshua Winfred Tate, Deceased, Pltfs. vs. Ford Motor Company and Bk Equipment, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Petition, First Interrogatories, Certificate(s) of Service, Attachment(s), Interrogatories, First Request(s) |
| **COURT/AGENCY:** | Stephens County District Court, OK<br>Case # CJ1579R |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Wrongful Death - 2010 Ford F250, VIN: 1FTSW2BR0AEA73002 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Oklahoma City, OK |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/19/2015 at 11:12 |
| **JURISDICTION SERVED:** | Oklahoma |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Patrick R. Scott<br>The Ammons Law Firm, L.L.P.<br>3700 Montrose Boulevard<br>Houston, TX 77006<br>713-523-1606 |
| **REMARKS:** | Please note the process server underlined, circled, initiated and/or highlighted the entity name served at time of service at CT. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/19/2015, Expected Purge Date: 08/24/2015<br><br>Image SOP<br><br>Email Notification, Chris Dzbanski cdzbansk@ford.com<br><br>Email Notification, Mary Ann MacKinnon mmackin1@ford.com |
| **SIGNED:** | The Corporation Company |
| **ADDRESS:** | 1833 South Morgan Road<br>Oklahoma City, OK 73128 |
| **TELEPHONE:** | 214-932-3601 |

Page 1 of 1 / AS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

8-19-2015  11:12A

~~ORIGINAL~~

## IN THE DISTRICT COURT OF STEPHENS COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| JAY WINFRED TATE, an Individual and as Co-Personal Representative of the ESTATE OF JOSHUA WINFRED TATE, Deceased, and LAURA A. DANIEL, an Individual and as Co-Personal Representative of the ESTATE OF JOSHUA WINFRED TATE, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY and BK EQUIPMENT, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. CJ-15-79R)<br>)<br>)<br>)<br>) |

### ORIGINAL SUMMONS

ATTENTION: Sheriff, Deputy Sheriff, Process Server

When service has been made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on: Ford Motor Company, through it's registered agent, The Corporation Company, 1833 S. Morgan Road, Oklahoma City, Oklahoma 73128

Plaintiff or Attorney for Plaintiff:
Patrick R. Scott, OBA #30915
Bennett A. Midlo, *pro hac vice app pending*
The Ammons Law Firm
Attorneys for Plaintiffs
3700 Montrose Blvd.
Houston, Texas 77006
713/523-1606 Telephone
713/523-4159 Facsimile

Process Server, _Mike Davis_
appointed to serve, PSL No. 14-91

Authorized by

TO THE ABOVE NAMED DEFENDANT(s):

You have been sued by the above named plaintiff(s), and you are directed to file a written answer to the attached petition in the court at the above address within twenty (20) days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the plaintiff.

Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this 3rd day of June, 2015.

STEPHENS COUNTY COURT CLERK
By _____
Deputy Court Clerk   [SEAL]

TO THE ABOVE NAMED DEFENDANT(s)

This summons was served on 11-19-2015.

_Mike Davis_
Signature of person serving summons

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.